# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 23, 2017 Session

## R.B.E., PLLC ET AL. V. EMERGENCY COVERAGE CORPORATION

**Appeal from the Circuit Court for Knox County**
**No. 2-540-15          Kristi M. Davis, Judge**

_____

**No. E2016-02378-COA-R3-CV**

_____

This case focuses on a service contract between R.B.E,PLLC (RBE) and Emergency Coverage Corporation pursuant to which Dr. Robert Bruce Evans[1] and his company were to provide medical services in emergency rooms. The issue before us is whether the subject contract obligates Emergency Coverage to schedule Dr. Evans for a *minimum* number of hours. Dr. Evans[2] and RBE filed a breach of contract action alleging that Emergency Coverage failed to pay the required minimum monthly amounts due under the contract. Emergency Coverage filed a motion for summary judgment asserting that the contract contains a minimum *availability* requirement for Dr. Evans but no obligation on the part of Emergency Coverage to use Dr. Evans for a guaranteed number of hours. The trial court granted the motion. The plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Mark T. Hurt, Abingdon, Virginia, for the appellants, R.B.E.,PLLC, and David Michael Serrano, Executor of the Estate of Dr. Robert Bruce Evans.

Andrew R. Tillman and Jeremey R. Goolsby, Knoxville, Tennessee, for the appellee, Emergency Coverage Corporation.

_____

[1] While he is not a named party to the contract, he is the sole member of RBE, a professional limited liability company. We will refer to Dr. Evans since he is the beneficiary of and, effectively, the obligor under, the contract. All references to Dr. Evans in this opinion are equally applicable to RBE.

[2] Dr. Evans passed away on February 17, 2016, and the Executor of his Estate was substituted as a plaintiff.

# OPINION

## I.

Emergency Coverage is a staffing company that contracts with physicians to provide coverage in hospital emergency rooms. The plaintiff RBE entered into a contract with Emergency Coverage for Dr. Evans to provide medical services at two hospitals. The genesis of this litigation is in the language of the service contract; "Addendum 1" executed contemporaneously with the contract; and three amendments to Addendum 1. The relevant portions of the parties' agreement can be found in the original contract, and the four Addenda. The following is from the contract:

> Scheduling. Professional agrees to provide Services at Facilities during mutually agreeable shifts, including holidays as necessary in accordance with the minimum availability requirements set forth in Addendum "1". For each month that this Agreement is in effect, Professional will notify Company of the days Professional is not available to provide Services. When scheduling Professional to perform Services, Company shall use reasonable efforts to accommodate Professional's availability. In the event that Professional is or becomes unable to provide Services as scheduled by Company, Professional must immediately notify Company and locate a replacement to fill Professional's vacant shift in order that the schedule may be filled. Except in cases of emergency, if Professional fails to procure replacement coverage to fill Professional's vacant shift, Professional will pay Company any expenses incurred by Company in providing a substitute for Professional.

As previously noted in this opinion, Addendum 1 was amended three times. The last amendment was effective during the timeframe relevant to this appeal. Dr. Evans was obligated to provide emergency room services at two locations, Wythe County Community Hospital and Clinch Valley Medical Center. The following language from that last amendment is relevant:

> **Service Locations; Base Compensation; Scheduling Requirement**. Professional agrees to provide Services under this Agreement for the number of hours or shifts as set forth below at the following Facility(ies) [sic] at the following base rates for Services provided by Professional:

Facility Name

a. Wythe County Hospital
b. Clinch Valley Medical Center

Service Line

a. Emergency Department
b. Emergency Department

Base Rate

a. $150 per hour
b. $175 per hour

Scheduling Requirement

a. Minimum of 144 hours each month
b. Minimum of 120 hours each month

(Numbering in original omitted; underlining and bold font in original.)

The plaintiffs allege that Emergency Coverage failed to pay the minimum monthly amounts due under the contract. According to the plaintiffs, Dr. Evans made himself available to work the minimum number of hours and is entitled to compensation for that number of hours, regardless of whether he actually worked those hours.

Emergency Coverage filed a motion for summary judgment. It asserted that it had no obligation to pay Dr. Evans for shifts not worked. According to Emergency Coverage, "the [c]ontract requires [Dr. Evans] to be *available* for a *minimum* number of hours, the [c]ontract does not require [Emergency Coverage] to *actually schedule* him for the full amount of his availability." (Emphasis in original.) According to Emergency Coverage, the contract does not require Emergency Coverage to schedule Dr. Evans for nor does it guarantee that he would be scheduled for a minimum number of hours.

The trial court granted Emergency Coverage summary judgment. The court found that "[t]he various addenda all relate back to the minimum availability requirement in that they more particularly define that availability requirement." The trial court concluded that the contract is not ambiguous. As will be explained in this opinion, the contract establishes a minimum availability requirement for Dr. Evans, not a scheduling requirement for Emergency Coverage.

## II.

The issue before the Court is whether the trial court erred when it construed the contract as not requiring Emergency Coverage to schedule Dr. Evans for a minimum number of hours each month.

## III.

We review a grant of summary judgment in accordance with the following standard, as established by the Supreme Court:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

> \*    \*    \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (emphasis in original). In this case, there are no disputed material facts. The only issues are ones of law.

## IV.

## A.

The contract at issue designates the governing law as the law of the state where the healthcare facilities are located. Because the facilities where Dr. Evans was to provide

- 4 -

services are located in Virginia, that State's law governs this dispute.

The Supreme Court of Virginia has provided the following guidance:

> [T]he question whether a contract is ambiguous is not one of fact but one of law.
>
> . . . [W]e have often said that it is the duty of the court to construe a contract as written:
>
> It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

*Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984).

## B.

According to the plaintiffs, the contract unambiguously required Emergency Coverage to schedule Dr. Evans for a minimum number of hours. They claim that, because the number of hours provided in the contract was labeled a "scheduling requirement," the contract expressly required Emergency Coverage to schedule Dr. Evans for that number of hours.

As previously noted in this opinion, the contract provides that Dr. Evans "agrees to provide Services at Facilities during mutually agreeable shifts including holidays as necessary in accordance with the minimum availability requirements set forth in [the contract]." Under the contract, Dr. Evans "agrees to provide Services under this [a]greement for the number of hours or shifts as set forth below . . . at the following base rates for Services provided by [him]."

In plain language, the Addendum defines the "minimum availability requirements" for Dr. Evans. This provision deals with Dr. Evans and how many hours he must be available, not with the number of hours that Emergency Coverage must schedule him. This interpretation is supported by the language that Dr. Evans agreed to provide services "*as necessary*." (Emphasis added.) This language demonstrates that Emergency Coverage would utilize Dr. Evans's services *as needed* and, contrary to Dr. Evans's position, was not agreeing to schedule him for the number of hours set forth in the last addendum.

While the minimum number of hours in the contract is set forth under the heading "Scheduling Requirement," the contract does not purport to place on Emergency Coverage a duty to schedule Dr. Evans for that number of hours. When read as a whole, the scheduling requirement simply establishes that Dr. Evans must be *available* for Emergency Coverage to *schedule* him for that number of hours each month. Nothing in the contract imposes an obligation on Emergency Coverage to schedule Dr. Evans. The contract does, however, impose an obligation on Dr. Evans to be available. The scheduling requirement is clearly an obligation imposed on Dr. Evans and not Emergency Coverage.

The contract, when read as a whole, lends support to this interpretation. Under the provision titled "professional duties," the contract provides that Dr. Evans "will render medical services ("Services") . . . ." Also, the provision dealing with "service compensation" explains that Dr. Evans would be paid the amounts in the contract in consideration for assigning his professional fees to Emergency Coverage. It is significant that the contract focuses on his "Services" rather than on hours not worked by him. The contract is clear that Dr. Evans would be compensated by Emergency Coverage for rendering medical services and he, in return, would assign his compensation from the hospitals to Emergency Coverage. Nothing in the contract imposes an obligation on Emergency Coverage to compensate Dr. Evans in connection with shifts he did not work.

The plaintiffs claim that implied covenants would require Emergency Coverage to schedule Dr. Evans for the minimum number of hours set forth in the contract. They argue that Emergency Coverage must not prevent nor hinder performance of the contract by Dr. Evans. Emergency Coverage, however, has not hindered performance. Performance under the contract involved Dr. Evans working the shifts for which Emergency Coverage scheduled him. By not scheduling Dr. Evans, Emergency Coverage did not hinder his ability to work as a physician.

The plaintiffs also argue that there was an implied obligation for Emergency Coverage to not frustrate Dr. Evans's expectation of working. Because there was no requirement for Emergency Coverage to schedule Dr. Evans, there could be no expectation of work. Additionally, under the terms of the contract, when Emergency Coverage did not schedule Dr. Evans, he was free to work at another facility or for another company. Accordingly, Emergency Coverage did nothing to frustrate Dr. Evans's expectation of working.

In summary, the contract is unambiguous. The clear intention of the parties based on the contract as written was that Dr. Evans would be available to work a minimum number of hours each month and Emergency Coverage would pay Dr. Evans for the number of hours he worked. The "scheduling requirement" defines the minimum availability requirement that Dr. Evans was obligated to meet. Under the contract, Dr.

Evans would be compensated using the base hourly rate of pay for rendering services. Emergency Coverage was not required to schedule Dr. Evans for a certain number of hours. There is no error in the trial court's grant of summary judgment.

## V.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellants, R.B.E.,PLLC and David Michael Serrano, Executor of the Estate of Robert Bruce Evans. This case is remanded to the trial court for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE